and the final case on the calendar is United States v. Jordan and we have Ms. Covert for the appellant. Good morning, Your Honors. Mary Beth Covert from the Federal Public Defender's Office for defendant appellant Martel Jordan. Good morning and Ms. Lee for the government. Good morning, Your Honors. Good morning. All right, I think we're ready to go. Ms. Covert, go ahead. You have two minutes reserved for rebuttal. Thank you. May it please the court. The issue here is whether or not a dual object conspiracy, one of the objects to which is cocaine, which is a covered offense, these were modified under the Fair Sentencing Act, whether that continues to qualify as a covered offense because another object of the conspiracy is powder cocaine and that those penalties were not modified. I'm aware and mindful of this court's unpublished summary order in Lott where a pro se defendant, Anthony Murphy, had raised a first step back motion in this court relying on the precedent in United States v. Echavarri said that the conspiracy would not count as a covered offense. But Echavarri didn't reach the question when there's this daylight, if you will, between the sentence that's imposed, which is what we have here, the statutory floor in a sentence of 254 months, which is higher than the sentence. But Ms. Covert, isn't the question whether the statutory penalties have been changed? The question is whether the statutory penalties have been modified. And so then, excuse me, Ms. Covert, if that's the question, then why would it matter whether the particular sentence was at the mandatory minimum or at the statute exceeded the other statutory maximum or was somewhere in the middle? The question of eligibility turns on whether the statutory penalty was changed by the Fair Sentencing Act. Isn't that right? Well, yes, but for Echavarri, because the court had no discretion to go any lower. You're saying essentially it was moot in that case because it was at 10 years and so the petitioner had no authority, even though there had been a modification. The argument was that there could still have been a modification of the statute, but there was just no ability to do anything, right? No ability to give anything under 404B. Well, Ms. Covert, could I ask what the statutory penalty was before the first, before the, I always get my FSAs mixed up, before the Fair Sentencing Act. What was the statutory penalty for a conspiracy that alleged a B1A quantity of cocaine and a B1B quantity of crack? The B1A quantity of cocaine would have carried a statutory penalty of 10 to life. And if the jury found both prongs of the conspiracy, that would govern, right? Well, that would govern for purposes of sentencing, but I don't think that governs for purposes of what statutory penalties apply to the particular objects of a conspiracy. But the particular object of the conspiracy is not what determines the penalty. What determines the penalty is the object or objects of the conspiracy that the jury found, right? And if the jury finds a B1A quantity of one drug, the penalty is, was, before the Fair Sentencing Act, was, and is today, whatever is the higher prong. So I would disagree with that, Judge, because I think that, that the penalties still apply to the individual objects and what this, what the sentence, the court. But there's only one sentence, isn't there? There's only one crime. There's one crime of a conspiracy with multiple objects. If the defendant is only convicted of a B1B quantity of a drug and is acquitted of the B1A quantity that was also charged as part of the conspiracy, then, of course, the statutory penalty for the crime of conviction is the B1B maximum. But if the defendant is convicted of both prongs, a B1A quantity of heroin and a B1B quantity of powder cocaine, for example, there's only one crime committed, conspiracy to distribute narcotics, and the penalty is determined by the highest penalty for one of the objects of the conspiracy. Isn't that important? Always was the case, always is the case, still is the case. Well, I guess I would say two things to that. 846 directs us to look at the objects of the conspiracy, and it directs us back to 841 B1A and 841 B1B to determine what those penalties are. And as our sister circuits have said, that's for each object in a conspiracy. We look to what those penalties are. And then if Congress had meant for the remedial purposes of the First Step Act to be constrained in the way that the government is arguing, then it would have used different language in 404A in terms of the limitations of it. I'm having trouble understanding what's wrong with the language that Congress used. It says if the penalty for this crime was reduced, but the not been reduced. The penalty for the crime of conviction was what is provided by B1A, and that remains the case after the passage of the Fair Sentencing Act, doesn't it? Well, except that the crime of conviction includes a quantity, a triggering quantity of crack cocaine in addition. Well, then suppose what would happen in that event if the person had only been charged with powder cocaine? Would you say that the penalties for an 846 offense charged for a violation of 841 B1A have been changed because 841 B1A was changed? Well, no, because we know from 404B that we only have relief for folks, even if you wanted to read it that way, which I don't. But if you wanted to suggest that that was true, the court again can only re-sentence by putting in place the Fair Sentencing Act provision. But you see, that's my problem. That's the escape patch. Isn't that still the case now? Because the penalty range is still the B1A penalty range today for the crime of which this man was convicted. But I think if Congress wanted us to look at the penalty range and not instead to the incremental changes in the drug quantity weight as was changed in their first sentence. No, I'm not talking about that. I'm not talking about that. I'm talking about the fact that the penalty, the statute directs that the penalty range is determined not by a subsidiary penalty. I mean, you're suggesting, for example, suppose it was an 841C quantity of crack, but an 841A quantity of powder cocaine. Why would that, you're saying that if somebody is convicted of a trivial amount of crack and a massive amount of powder cocaine, that he would be entitled to, he would be eligible for a re-sentencing, notwithstanding that the statutory range for the crime of which he was convicted, which was a multi-object conspiracy under 846, has not been affected one whit. He still has the exact same penalty structure as he would have had before. And yes, if an object was crack, even if it was an 841B1C, I would argue that that person, that person would be eligible for relief, but not entitled to relief. And, and I, I'm, I'm saying, I agree he's not entitled because it's discretionary, right? Is that, is that the only point you're making? Well, no, I also wanted to sort of direct the court's attention to the, the, the cert grant and Terry versus United States, which is the question of whether or not 841B1C is in and of itself a covered offense. And their judge, Anamikis was filed by the senators who are the authors of the first step act, who said the use of the term modified is directly tied to the quantity changes with respect to the incremental changes in quantity. But doesn't it have to have an effect on the ultimate penalty for the crime of conviction? No, because the penalties in 841B1B weren't changed at all. The ranges are still five to five to 40 and 10 to life on the enhancers and zero to 20 on an 841B1C. So if it turned on the- But he would not be eligible any longer for that. If all he was charged with was crack, then I agree the penalty structure has changed because the quantity that makes him eligible for that penalty has been changed. But here, there has been no change in the penalty structure that makes him eligible for any different sentence than the one that he was faced with in the first place as a matter of the penalty structure for the crime of conviction, because it was and remains governed by the quantity of powder cocaine. And I'm asking the court to consider the sister circuit findings from Taylor and Winter and Gravitt that suggests that in a conspiracy that it's all of the penalties of all of the objects. Ms. Colbert, let me just take you, I want to take you back to the language of the statute because I guess that was my focus. It says a covered offense is a violation of a federal criminal statute, and I emphasize the word statute. I think most free circuit cases do as well. The statutory penalties for which were modified by Section 3 of the Fair Sentencing Act. So if the question is, was your client, was one of his sentences a violation of a federal criminal statute for which the penalty for change, he did, he was convicted, I think the government conceded of 841 B1A subsection 3 as it relates to crack. So he was convicted for a violation of a crack statute that was the penalties for which were modified. It's not modified in his particular case. For the old, as Judge Flint pointed out, it's his ultimate sentence, but he has the other object, but the definition doesn't seem to include that analysis that essentially. Yes, yes, Judge. And the reason for interpreting that way would be if Congress's idea was these crack penalties, the crack cases, the penalties were too high. So we're modifying it. We want to be able to reconsider any sentences that would involve crack. The reason, even when there's a dual objective conspiracy of permitting that would be if you had, and again, this may not apply in every case, depending on the facts, but this is what the thinking would be. If even part of the offense was crack, that may have been the driver in the judge's decision about what the ultimate sentence would be. Forget about the mandatory minimums. The judge may have said, you know, I think crack is really serious. I'm giving you 20 years for this dual objective conspiracy. And the hope, I think of the first step is have the judge look at that again. Was it really right to give that guy 20 years? Or do you want to lower that? And if the fact that there was also a conviction for another objective prevented that type of review, the concern would be that what the ability for a judge to correct what they now say was too high to be true. That's absolutely correct, Judge. And that's actually what the Winters Court decided and alluded to out of the Fifth Circuit, that the fact that the court was granting relief in that case on a multi-object conspiracy was exactly the kind of relief that Congress was intending when it passed the first effect. Because it could be a situation where even though it was a dual objective conspiracy, it was the crack that was driving the sentence on that count, right? Absolutely. And the government's arguments to the contrary, or that this was maybe a more serious crime because it involved multiple drugs, or there's going to be some disparity associated with our interpretation, are really all covered in the discretionary phase and would be things they could argue to a district court as to why- There's a separate complicated question too, which I don't think we would need to reach if we were to agree with you on the first one, which is the fact that the government concedes that counts two and three should now be remanded because they are definitely covered offenses. How that would then impact whether or not under like a multi-count analysis that it would now cover count one. I think that's a much more, it's a much more complicated issue, I guess. We certainly argue in our reply brief that that would be the sentencing package doctrine. Those were offenses were grouped in that sentence, was opposed as a result of that would go back. I just, I hesitate to tell the, to ask the court to send it back on that issue and that issue alone. We are two years plus post First Step Act. We are at the tail end of these cases and, but for the multi-object conspiracies and the B1C issues, there's very little left in terms of guidance that we need from this court to resolve the remaining cases. I would hesitate to ask the court to do that. We are asking for a published opinion on the dual object conspiracy issue because of the people aren't getting the remedy for the relief if it's a covered offense, as we argue. All right, thank you. Ms. Lee, you're up. Thank you, your honors. May it please the court. My name is Tiffany Lee and I represent the United States. Judge Bianco, I would agree with Ms. Covert in terms of the fact that count one, like a determination on count one is important because of the fact that to the extent that it conceded in and of themselves are violations of a criminal statute for which penalties have been modified by sections two and three of the Fair Sentencing Act. The reality is you still have count one out there and it would be difficult for any district court to determine, you know, the discretionary process without an understanding. I understand that. Let me ask you, let me ask you about count one. Okay. Was Mr. Jordan convicted of violating 841 B1A subsection three in relation to crack? He was and B1A2. All right, I understand the end, but I'll give you the chance to explain the end, but the Congress's definition doesn't require it be like only that violation. It says a covered offense. You heard me read it. I'll read it just again. A violation of a federal criminal statute, the statute penalties for which were modified. And he was convicted under 841 B1A3. B841 B1A3 was modified. If Congress wanted them to say only B1A3, they could have said that, but they didn't say that, right? Your Honor, I'm going to turn to this court's decision in the United States versus Johnson, which is also known as Davis now, on which panel yourself sat, you sat on. We, in that case, this court determined what constitutes a covered offense. So what constitutes a covered offense is any defendant who committed all the elements of this offense. Would the sentence be the same pre-fair sentencing act or post-fair sentencing act? Would the sentencing be the same? I don't think you're characterizing. No, I meant like the sentencing penalty range that that defendant faces on the conviction, right? And the conviction includes all the elements plus the statutory enhancement. You said it doesn't matter what he faced. It's not defendant specific and clear. It doesn't relate to what he did or not even what the impact would necessarily be. Did the penalty change? Did the penalty change for that statute? That's really what it comes down to. And the penalty did not change for a conviction where someone has both objects in terms of B1, B2. The penalty changed on one of the aspects of the conviction, but as Judge Wendt pointed out, it had no impact on his overall penalty as it relates to a mandatory minimum because of the other one. But that covered, there was a statute that he was convicted of, the penalty for which changed, but I want to get in terms of why Congress would want it this way. You heard my question from Ms. Colbert. Why wouldn't it be if it's a dual objective conspiracy where the judge, you know, arriving at the mandatory minimums that, you know, the judge just said, look, crack's a very serious thing. I'm going to give you a lot of time and gave a lot of time to the person. There may have also been powder cocaine, but it wasn't driving the sentencing. And under the government's view, that judge would have no ability to reevaluate that sentence in light of a new understanding of those crack penalties that were previously imposed. Isn't that contrary to what the whole First Step Act is trying to do? Your Honor, with respect to this provision in terms of retroactivity of, you know, the Fair Sentencing Act, what the First Step Act was trying to do was in terms of the category of statutes. I mean, that's the class. I was trying to say, if any defendants were convicted of crack offenses where the penalties have been changed, you want judges to be able to look at those. Correct. However, but this offense is. Regardless of whether they, in a conspiracy, also felt powder or heroin, because who knows what the judge was basing that sentence on that count for. If I'm the judge in this case, and I'm basing it on the crack, and I say, gee, I would love to revisit that sentence. You're telling me, no, you don't have the power to do that. Not because, and because of the fact that the conspiracy, the sentence that any defendant, it's not, and it's not defendant specific. The way that offense, statutory offense and penalties were structured pre-Fair Sentencing Act is the exact same post-Fair Sentencing Act. Ms. Lee, is it fair that what you're saying is Judge Bianco's question would suggest that a judge who sentenced someone for a D1A quantity of crack that was way in excess, not only of the, or that was in excess, not only of the past level, but is still in excess of D1A today, right? Correct. But the judge says, well, but I gave a very high sentence, well beyond the mandatory minimum, because I thought crack was really bad. Now it seems crack wasn't so really bad. I'd like to have that one back. You're saying he doesn't have that one back if the statutory penalty range for the quantity sold would still be in excess of the D1A quantity minimum. I think that is, you know, and I think there was a somewhat of a little bit of discussion of this in the Johnson footnotes, but the reality is- Wait, hold on. You do get that one back, right? You do get that one back. I think you, yes. Let's make it hypothetical. 20 kilos of crack, right? The judge gives them 40 years for 20 kilos of crack. Under the first step back, you get that case back, even though he's way above, right? Yes. Okay. Okay. You're saying in that same case where the judge gave him 40 years because of the 20 kilograms of crack, but now it says that was wrong. I should have only given him 15 years for that. You're saying if there was a dual objective conspiracy where he also happened to do five kilos of powder, which wasn't the reason for the 40 year sentence, the reason for the 40 years sentence was the unbelievable amount of crack. He can't get that case back because there's some powder involved in the conspiracy. It's not because of there's some powder involved in the conspiracy. It's which the statutory penalties for which were modified. When you're looking at the statutory penalties, the statute doesn't say a statutory penalty. It's looking at the complete sentencing. It doesn't say any of that. It doesn't say by count. It doesn't say the overall sentencing. It doesn't define it that way. It just says violation of a federal criminal statute period. It doesn't say by count or by what the overall sentence was precisely for the reason that I'm suggesting to you is they wanted to give more flexibility when crack was involved in the case to address it. But in this case where you have like basically the B12 was five kilograms or more of powder cocaine and by 50 grams, at least 50 grams of crack here, it was the cocaine. Nothing has changed with respect to the powder cocaine. And again, this court noticed it was it's not just the, you know, just because there's crack involved doesn't confer eligibility. What Congress was looking at was a category of statutes, a category of statutes for which there had been an impact because of the fair sentencing. Miss Lee, do you want to reconsider your answer to the question of was the defendant convicted of violating 841B1A3 in count one? Of course, in count two and three, that's exactly what he's convicted of. But in count one, he's convicted of violating 21 United States Code Section 846. It's true. However, this court in Johnson says that when you're looking at what constitutes a covered offense, you're not only looking at the statutory elements, but you're also looking at the generic elements tied to the penalty provisions. So, yeah, okay. So, I cannot. If you say that, then I'm not sure why Judge Danko doesn't have to be right. Because the But if you're looking through the conspiracy charge to every object of the conspiracy, and you say, well, he actually was convicted of a conspiracy to distribute crack, then why isn't that something for which maybe it did, maybe it didn't affect this sentence, or maybe it did, maybe it didn't affect what the sentencing discretion of the judge was. But it was an object of which he was, in fact, convicted, was a crack offense for which the penalties were reduced. Because we're looking at the entirety of it, and the entirety of it, like in terms of this statutory offense, with the two objects, you know, he ended up, the sentencing range he faced was the more serious, in terms of it was the powder cocaine that drove the sentencing, and that ultimately, nothing has changed. It may be in this particular case with the powder cocaine that drove the sentencing, but our holding would bind every judge in every type of case, even a case where the crack was driving the sentencing, that's the problem. It may be as a matter of discretion, the judge might say, the crack wasn't driving the sentencing, the powder was, no reduction. But what you're asking us to find, would bar any court from looking at a dual object with a serious conspiracy, even when the crack was the whole reason for the sentence? Well, you know, we're specifically hewing, your honor, to the language, the statutory penalties for which were modified by sections two or three of the Fair Sentencing Act. When you're looking at the statutory penalties for this conviction, which is a conspiracy to, you know, involving five kilos of powder cocaine, and at least 50 grams of base of crack, that nothing, the statutory penalties have not changed for any defendant, pre or post, they will still be facing the same statutory range. And that's where at your very kind of comes in on, because the same reason why, if I just want to, is that when you said that, I think perfectly defined it, there has been a modification of the penalty, but what they're facing will remain the same, because of the other objective. That's really, I know, it's a linguistic thing, but I just, that's the difference. The difference is, it did, he did was convicted of 841 B1A3. And that did change, but he's going to be facing the same amount because he was also convicted of 841 B1A2. Right. Well, that's a different thing than saying that the penalty didn't change, the penalty changed. Well, he's facing it. Well, I think that the statutory circuit, the Fourth Circuit and the Eleventh Circuit have read it, right? I mean, there's no, there's no other reading, there's no other court, you know, Escobar. I think it was a different scenario, but is that in terms of the cases that are out there? I think that the way the cases that are read out there is they're saying that basically, you have to consider the statutory penalties to have been modified when any statutory penalty, like it has a crack element to it, has been modified. I wanted to, in your brief, you did have this thing, which gave me a lot of thought, because you said, well, this is absurd, I think, because if you're just convicted of powder, you don't get a second, you obviously don't qualify. So if you've done something more serious and done crack, you're going to get the benefit of a potential sentencing reduction, somehow it seems, the more serious drug offender. But I was thinking about that. But the whole point of this is that we think there's a problem with crack, is what Congress is saying. So it's not really absurd to say, if you don't have any it's, or am I missing something? No, you're just saying to the powder guy, we don't get to the powder, but we're not all your sense. Even though this guy may be more serious, because he had crack as well, because there was an issue with crack. So even though he convicted of something more seriously, he also had crack, we got to look at his sense because he had some crack and we don't know how that played into the judge's sentence. I think, you know, all of this has to be looked into the frame of the Fair Sentencing Act. So the purpose of the First Step Act was to open up the category because of non retroactivity of the Fair Sentencing Act when they came into play in 2010. But now with the First Step Act, and as this court stated in Johnson, we've now delineated a class, and it all relates to the statute and the statutes for which the penalties have been modified. And ultimately, we're coming down to no matter who committed this particular offense, their penalties were not modified. And it's illustrated with Echeverry, which I agree is distinct. But if that those defendants are sentenced at the bottom, there is no more like at the bottom of the non covered offense. There's no more room, there's no authority for the district court to go any further because sections two and three did not affect that person. Mr. Jordan had 240 months on count one, then he'd be the same as Mr. Echeverry, but he doesn't have 240. He has 250. Correct. Correct. Ultimately, he would be potentially eligible here for a 14 month reduction, right? Correct. If you if you if you go with the fact that count one is a covered offense, but we're saying that basically, when you're looking at this, at the whole thing, from the statute to the penalties involved and everything, just because one crack covered offense is involved, such as here in this dual object conspiracy does not modify, in fact, the statutory penalties faced by someone who's convicted of a dual object conspiracy, where both powder and crack are objects. If someone was convicted after the Fair Sentencing Act, for conduct that occurred after the Fair Sentencing Act, what would for the same sort of behavior, the same constellation of offenses here, his penalties would not have been affected? The only thing that might have been affected is the judge's attitude towards crack. But the statute would have been, he would still be facing the same statutory penalty. On? Yes. Or, yes. That's that's, in essence, what we're saying is that the statute toward like, there has been no modification by sections two or three of the Fair Sentencing Act in terms of the statutory penalties faced for someone who has committed 846, where the objects are five kilos or more of powder cocaine and 50 grams, at least 50 grams of crack. But if you have 30 kilos of crack, you're convicted, your statutory penalties you're facing haven't changed, right? If you have 30 kilos of crack, your statutory penalties you're facing have not changed even after the first step back, you're still facing 10 to 10 to life, right? Now, I'm sure number you can trust me. I will trust you, Your Honor. I definitely will. I'm talking about the statutory penalty you're facing for 30 kilos of crack alone. You didn't get anything else other than 30 kilos of crack. After the first step, you're still facing 10 to life, right? Yes. For under this framework or the? In general, in general, in general, right? You're still looking at 10 to life before the first step back. Yes. But you are definitely eligible, even though you're still facing 10 to life, you're still eligible to get a reduction, right? In terms of which penalties have been modified? Yes. Because there's been a penalty modification of that. Because the penalty for crack has been modified, even though you're facing the same mandatory minimum, the same maximum. So, but there's a lot in between those. I know, I know. So, like, ultimately, the question is, what has been modified, right? Or, and so here, the thing is, there are two things going on with respect to the statutory violation. And they have to be, they have to be read whole. So, I understand what you're saying. I just wanted to clarify this issue of what he's facing, not being the determinant in terms of the minimum and the maximum. That's not the issue, what he's, quote, unquote, facing, right? No. If someone, if someone in Judge Bianco's hypothetical who is convicted of this enormous amount of crack, in between the Fair Sentencing Act and the First Step Act, that his conduct occurred. In other words, his conduct was post-Fair Sentencing Act. He distributes an enormous amount of crack. He is sentenced, though, under the Fair Sentencing Act. The judge says, well, it's enormous amount of crack, you got this big sentence. And I think that's because crack is still pretty terrible. Okay. Now, he's not eligible for anything under the First Step Act, because the First Step Act just makes retroactive what the Fair Sentencing Act did, and he was sentenced under the Fair Sentencing Act. Yeah, because, I mean, the First Step Act relief is a reduced sentence, as if sections two and three of the Fair Sentencing Act were in effect at the time the cover defense was committed. And if it was in effect, he gets no relief. Correct. I mean, in your hypothetical, he's already been sentenced under the Fair Sentencing Act. Sentencing Act, yeah. So, I mean, that's where this whole thing is. Yeah, but I guess we can assume, though, that that person had the benefit of being able to argue to the court that Congress no longer thinks crack is that bad, because they've changed the statutory penalty regime. And therefore, even though, yes, I'm way in excess of the amount that makes me eligible for 10 to life, you still shouldn't go overboard on this, because Congress has shown that it doesn't practice so terribly. But the person who was sentenced the day before, or the week before, or whatever, the year before the Fair Sentencing Act, did not get the benefit of being able to argue that Congress had changed the deal, because Congress only changed the deal prospectively, or they hadn't changed it at all yet. Is that the idea? I think that would be true. Thank you very much, Ms. Lee. Ms. Colbert, you have two minutes and revolve. Yes, just briefly, Judge Bianco, in your hypothetical with the astronomical kilos of crack cocaine, that was essentially Monet Davis, right? And the government argued that those judges, as you just indicated, who was sentenced after the Fair Sentencing Act, convicted and sentenced after the implementation of the Fair Sentencing Act would still be under those same higher penalties where somebody like Monet Davis was getting discretionary relief under the retroactive application of the First Step Act. But that's exactly the kind of thing that Congress can fix if Congress wants to fix it. If they want to correct the still disparity of 18 to 41, it has an ability to do that. We hear rumblings that they want to do away with mandatory minimums and that there's some bipartisan support for that. So all of the disparities that might take place after the implementation of the Fair Sentencing Act that Congress wants to correct, they can certainly go back and do that. We know that Martel Jordan was convicted of an 841B1A offense because I have a jury verdict that the jury considered and convicted him of 50 grams or more of crack. Whether or not the sentencing penalty range change doesn't change the fact that he was convicted of an offense, the penalties of which were modified by the Fair Sentencing Act with respect to the crack object. And so we are asking the court to issue a published opinion on it so that we can move forward on these last few cases that we have. All right. Thank you very much, Ms. Cohen and Ms. Lee. That was very helpful and we'll reserve the decision. Have a good day. Thank you.